# HAROLD ROSENTHAL
ATTORNEY AT LAW
803 HEARST AVENUE
BERKELEY, CALIFORNIA 94710
TELEPHONE: 510.981.1800
FACSIMILE: 510.981.1821
E-Mail: harold@haroldrosenthal.com

August 20, 2008

The Honorable Wayne D. Brazil
Magistrate Judge, United States District Court
1301 Clay Street
Oakland, CA 94612

Re: United States v Robert Obelton, CR 08-70465 WDB

Dear Magistrate Brazil:

    First, I would like to apologize for the confusion surrounding Mr. Obelton's bail. I made representations regarding equity in real property that turned out to be incorrect. Of course, I believed these representations when I made them, but I should have investigated the underlying facts more closely before doing so. I realize this has inconvenienced everybody, and I wish I could make that right. Nevertheless, I am confident that the Court will in no way hold this against Mr. Obelton, who was not involved with this process.

    I write to provide additional information regarding the bail situation. As indicated above, the government is correct that the equity situation differs from that I believed to exist when we appeared in Court last week. While I do not want to suggest that Mr. Sprague has unfairly attempted to characterize the situation, there is additional information of which I should apprise the Court.

    First, there is additional property, as to which I have submitted documentation, which we are prepared to post that will partly cover the equity shortfall. As stated, I have submitted these documents to the government, and will bring a copy of those documents for the Court tomorrow. Second, I will offer an explanation as to why the property has not been posted, a fact emphasized by Mr. Sprague in his letter to Court.

    As to how these events unfolded, I offer the following. Over the weekend I discovered that there was in fact no equity in the Hayward duplex owned by Mr. Obelton's father, Edward Obelton. I believed that there remained equity in the residences owned by Edward Obelton and the defendant's grandparents, the Martins. However, in an attempt to compensate for the problem with the duplex, I then gathered support for the submission of several valuable automobiles as additional assets to be posed as collateral. When I submitted to the government documentation regarding Edward Obelton's residence and the residence of the defendant's grandparents I also submitted documentation supporting the posting of four vehicles, including titles of ownership indicating no outstanding liens on these vehicles, with supporting

documentation preliminarily establishing the value of these vehicles in the range of $125,00 to $180,000.

At that time I still had not seen title reports for the real property. Among the documents that I lacked were definitive preliminary title reports as to the properties. This has been a particular problem in this instance, with one individual who had informed me that he would provide up to date documents supplying a preliminary title report that was two years old as to one property, and another simply failing to perform as promised. (As of today, I have been promised that the documents will be available on Friday.)

However, yesterday, shortly after submitting my documents to the government, I did finally receive a property profile, and that property profile demonstrated that in fact there was no equity in Edward Obelton's residence because it secured a line of credit. As soon as I received the property profile I called Mr. Sprague and we agreed that it would be appropriate that the matter be placed on your calendar. He said he would do so.

Additionally, as to Mr. Sprague's statement that none of the property has been posted, he is correct, but I believe the following should put that into perspective. In my initial submission to Mr. Sprague I included copies of executed deeds of trust and promissory notes for all the real property. I also stated that I was prepared to file them upon receiving indication from the government that the documents were satisfactory as to form and language, and that as long as the government indicated that it approved the documents as to form, I would do so even if they wished to question the reconstituted bail package. However, when I contacted Mr. Sprague after my initial submission to let him know about the problem with the Edward Obelton residence, I suggested that he might suspend his review because of the new development, and when we ended the conversation I was under the impression he had done so. (I believe I said something like, "Stop reading, I just got more bad news about the real property.") I probably should have suggested that he continue with his review as to the grandparents' property, because I was and continue to be prepared to post that property. (In fact, I am ready to post all the property, but question whether that is something that should be done in light of lack of equity in two out of the three properties that I am prepared to post as of today.) However, because we ceased our discussions, I did not record the grandparent's deed. I am prepared to do so after court tomorrow, and will have the original executed documents with me.

We are currently attempting to secure additional property as collateral, and I am ready to post the automobiles. I will be prepared to discuss this and any other issue the Court wishes me to address tomorrow.

Thank you for your consideration.

Very truly yours,

*HJRosenthal*

HAROLD ROSENTHAL

HJR:gr